UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MOHAMMAD SAYEDUR RAHMAN,

                Plaintiff,

          -against-

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

09 cv 82 (RJD)

DEARIE, Chief Judge.

Pursuant to 42 U.S.C. § 405(g), Mohammad Sayedur Rahman appeals the Commissioner of Social Security's final decision, denying him benefits under the Social Security Act ("SSA") for alleged disabilities, including chronic severe lower back pain, beginning on November 19, 2003, when plaintiff was hit by a truck while working as a security guard. The truck ran over plaintiff's right foot and struck the right side of his body, causing fractures to his right foot, wrist and elbow. Plaintiff was born on January 1, 1945, and has worked as a taxi driver, bookkeeper and security guard. The Commissioner denied plaintiff's application for Social Security Disability ("SSD") benefits, finding that plaintiff was capable of performing his past relevant work and that he was therefore not disabled as of September 30, 2006, the date he was last insured for Disability Insurance Benefits ("DIB").[1] Upon careful review of the entire record, the Court remands the matter for limited further proceedings.

---

[1] Plaintiff's date last insured ("DLI") is not in dispute. (See Tr. 73.)

## BACKGROUND

### I. Mohammad Rahman

Mohammad Rahman is a 64 year old Bangladeshi man who suffers from chronic pain, particularly in his lower back, resulting primarily from two unfortunate accidents (in 1999 and 2003) that caused significant injuries to plaintiff's back, right arm and right foot.

At the administrative hearing held on January 15, 2008, Rahman, who was represented by counsel, testified in English, though his command of the language is obviously limited. He described his past work as a taxi driver, and stated that he owns and occasionally drives a 1988 Mercury Tracer, though he no longer holds a "HAC" license to operate as a taxi driver. (Tr. 25-26.) He arrived in the U.S. in 1987, worked as a busboy and then drove a cab for ten years. (Id. 27-28.) Following a 1999 car accident, however, Rahman suffered "severe pain and neck pain" and never drove a cab again "due to severe pain in [his] lower back." (Tr. 30.) As a result of the accident, plaintiff did not work for 1 ½ years. He went back to work in 2000 as a bookkeeper for a computer training school, Lastco Group, where he remained until the school went out of business after the September 11, 2001 attacks. (Tr. 29-32.) As a bookkeeper, plaintiff sat for approximately six hours per day, walked for one hour and stood for one hour. He did no lifting. (Tr. 86.)

Plaintiff then worked as a security guard at a soda bottling plant for PSM Security Group. (Tr. 32-34.) The position required plaintiff to sit for seven hours, to walk for up to one hour and to open and close crates. (Tr. 87.) Unfortunately, while he was working at the plant on November 19, 2003, a truck struck plaintiff, running over his right foot, and causing injuries primarily to the right side of his body, including a broken elbow, wrist and foot. (Tr. 34-35.)

Plaintiff is right-handed. (Tr. 39.) He described his course of treatment with Drs. Rahman (a "rehabilitation doctor") and Diwan (orthopedist), testifying that he was in a cast for six to seven weeks, that his physical therapy lasted "about five, six months" and that he continues to see Dr. Rahman. (Tr. 35-38.)

Rahman has not worked since 2003 owing to the "severe pain" caused by sitting for any period over one hour. (Tr. 38.) He stated that he can lift up to twenty pounds with his left hand but only up to two pounds with his right hand. (Tr. 39.) He can walk "slowly" up to ten blocks before needing a five- to six-minute break, but he normally only walks the two blocks from his house to his mosque, two to three times per day. (Tr. 39-40, 92.) Walking exacerbates the pain in his right foot. (Tr. 42.) He cannot bend down and prays sitting in a chair. (Tr. 40.)

Plaintiff also completed several disability reports, in which he stated that he takes Tylenol from "time to time" for pain relief and uses a TENS unit and a heating pad, in addition to continued physical therapy. (Tr. 101.) He also stated that his pain grew worse as of January 15, 2005, and that he used Neurontin, Norvasc, calcium with vitamin D, and aspirin in addition to Tylenol to relieve his back, arm and foot pain. (Tr. 106.) At the hearing, plaintiff also stated that he was taking Tylenol, Norvasc and Flexiril for pain relief. (Tr. 41-42.)

## II. Summary of Medical Evidence

### A. *Dr. Mohammad Rahman, Plaintiff's Treating Physician*

Plaintiff's second accident occurred on November 19, 2003. He visited Dr. Rahman, a physical medicine and rehabilitation specialist, for the first time the next day. After examining plaintiff's injuries, Dr. Rahman concluded that he exhibited lumbosacral sprain/strain, contusions of the right wrist, hand, foot and ankle, as well as a foot fracture. (Tr. 156, 177.) He

3

recommended x-rays of the right elbow, right wrist, right hand, right forearm and right foot, as well as physical therapy three times a week and crutches. (Id.) He characterized plaintiff's condition as "temporary total disability." (Id.) The x-rays revealed fractures of the right elbow, hand and wrist. (Tr. 231-33.)

Dr. Rahman conducted a total of eleven examinations over the next several years, and submitted a detailed narrative report, dated October 16, 2007, concerning his medical findings and assessments of plaintiff's impairments. (Tr. 155-56, 176-77, 273-83.) When plaintiff returned to Dr. Rahman on December 8, 2003, he complained of lower back pain, radiating into his right leg (Tr. 171), right foot pain with numbness and burning, but some improvement in right elbow and wrist pain. (Id.) The impression was the same, and Dr. Rahman again assessed plaintiff's condition as "temporary total disability." (Id.)

Dr. Rahman next examined plaintiff on June 11, 2004. Plaintiff again reported lower back, right hand, elbow and foot pain, as well as tingling in the right and left leg and foot. (Tr. 153.) Plaintiff stated that his lower back pain increased with long periods of sitting, standing, walking and carrying or lifting "minor weight." (Id.) Dr. Rahman recommended an MRI of plaintiff's right shoulder and lumbosacral spine and nerve conduction (NCS) and electrodiagnostic studies (EMG) of his lower extremities. (Tr. 154.) The MRI of plaintiff's right shoulder, performed November 8, 2004, showed "degenerative changes and productive changes changes of the acromioclavicular joint." (Tr. 226.) The MRI of plaintiff's lumbar spine, performed on December 2, 2004, showed mild to moderate degeneartive disc changes. (Tr. 228-29.) The x-rays ordered by Dr. Rahman were apparently not taken until May 10, 2006, and showed arthritic changes in the toes, heel spurring and a healed fifth metatarsal fracture. (Tr.

230.) Finally, the NCS and EMG studies, performed on November 6, 2004, evidenced likely L5 radiculopathy on the left side or possible left common peroneal neuropathy. (Tr. 234-38.)

Dr. Rahman next saw plaintiff on July 29, 2006, diagnosing a "right 5th metatarsal fracture, lumbago, left L5 radiculopathy, right shoulder 'OA' [osteaoarthritis], degenerative joint disease of the lumbar spine, herniated nucleus pulposus at L3-L4, disc bulge at L3-L4 and L5-S1, right scaphoid fracture and right radial head fracture." (Tr. 225.) He again stated that plaintiff had a temporary total disability, recommended continued physical therapy and prescribed Neurontin 100 mg. (Id.) At this time, Dr. Rahman also completed a medical form for the New York State Office of Temporary and Disability Assistance. (Tr. 208-15.) He described plaintiff's current symptoms as lower back pain radiating to both thighs, numbness and tingling in both legs and feet, right elbow pain and right foot pain and burning. (Tr. 208.) Plaintiff's gate was antalgic. (Tr. 211.) He could lift up to 10 pounds "occasionally," could stand or walk no more than two hours per day and could sit less than six hours per day (Id.) The prognosis was "guarded" with "permanent symptoms." (Tr. 209.)

Plaintiff saw Dr. Rahman again in November 2006. (Tr. 306-08.) Plaintiff still experienced pain in his lower back, right foot and right elbow. (Id.) Dr. Rahman noted atrophy of the right arm. (Tr. 307.) He prescribed Neurontin and physical therapy 2-3 times per month consistent with plaintiff's symptoms. (Tr. 308.) His observations were essentially the same after a December 16, 2006 examination. (Tr. 309-11.)

On February 7, 2007, Dr. Rahman again examined plaintiff, finding pain and swelling in the right foot ("severe exacerbation") and tenderness in the right elbow, with slightly decreased muscle strength in the right ankle. (Tr. 312-14.) He diagnosed lumbago, right elbow and right

foot contusion. (Tr. 314.)

On October 16, 2007, Dr. Rahman examined plaintiff and completed a lengthy narrative report, including a RFC form. (Tr. 273-83.) Upon examination, Dr. Rahman again noted lower back pain, difficulty standing, sitting, bending and walking, right foot pain, right elbow and wrist pain. He proscribed Tylenol as needed and physical therapy 2-3 times per month as required. In his report, Dr. Rahman discusses several follow-up examinations not otherwise included in the record, including visits by plaintiff on January 16, 2004, December 18, 2004, May 10, 2006 (noting possible gout and neuroma) and September 12, 2007. (Tr. 275-283.) Dr. Rahman's "Final Diagnostic Impression" after the September 12, 2007 examination was lumbago, herniated nucleus pulosus at L3-L4, L5-S1, bulging disc at L3-L4, L4-L5 and L5-S1, degenerative joint disease of the lumbar spine, left L5 radiculopathy, right elbow contusion with right radial head fracture, right wrist contusion with right scaphoid fracture, right foot contusion with right fifth metatarsal fracture, gout, left lateral humeral epicondylitis, right shoulder osteoarthritis, right supraspinatus tendon intrasubstance partial tear and hypertension. (Tr. 282.) He concluded the October 16, 2007 report by stating:

> The prognosis for complete recovery is highly guarded. Follow-up evaluation [*sic*] have been advised during exacerbation of the above-mentioned conditions which are permanent in nature causing significant limitation of functions of the affected body parts.

(Tr. 283.)

Dr. Rahman's RFC form indicated that plaintiff could sit, stand or walk up to 2 hours in an 8-hour day, with frequent changes of posture (every 15-30 minutes). (Tr. 284.) He could lift and carry up to 10 pounds with his right arm, and occasionally lift and carry 10-20 pounds with

his left arm. (Id.)

### B. Dr. Laxmidhar Diwan, Plaintiff's Orthopedist

Dr. Diwan first examined plaintiff on November 24, 2003, just after the second accident. (Tr. 173-75.) Dr. Diwan characterized him as "totally disabled" and "unable to do any activities of his daily living." (Tr. 173.) After reviewing x-rays, Dr. Diwan's impression was fracture of the right elbow, right scaphoid and right foot. He casted plaintiff's right arm and wrist. (Tr. 174-75.) He next saw plaintiff on December 16, 2003, noting that x-rays showed the foot fractures to be in satisfactory position and alignment. (Tr. 170.) Plaintiff was wearing an Una Boot at the time, which Dr. Diwan removed at the next visit, on December 30, 2003. Dr. Diwan again examined plaintiff on January 13, 2004 for a follow-up visit. (Tr. 161.) He found based on x-rays that plaintiff's fractures were healing in satisfactory position and alignment. (Id.)

### C. Dr. Robert Zaretsky, New York Workers' Compensation Board Examiner

Dr. Zaretsky examined plaintiff on February 4, 2004, in connection with plaintiff's workers' compensation claim for the November 19, 2003 accident. (Tr. 159-60.) According to plaintiff, Dr. Zaretsky was hired by Public Service Mutual Insurance Company, "for the purpose of minimizing or eliminating future costs [to] that company." (Pl.'s Br. 18.) He found residual swelling of the right elbow with defects in extension, pronation and supination; mild to moderate defects in wrist mobility and mild swelling in the right hand and right foot. (Tr. 159.) Dr. Zaretsky could not identify an elbow fracture in an x-ray, though he noted degenerative changes and a large posterior spur at the olecranon. (Tr. 159-60.) He found a healed fracture of the right foot, as well as a spur near the Achilles tendon and a small heel spur. (Tr. 160.) In Dr. Zaretsky's opinion, plaintiff had a "marked partial disability." (Id.)

Dr. Zaretsky examined plaintiff again on March 31, 2004. (Tr. 157-58.) Based on his examination, he opined that "there is found no further evidence of causally related disability or need for any type of treatment. All of the injuries as previously noted have resolved. The diagnosis is sprain/strain of lumbosacral spine, sprain/strain right elbow, fracture fifth metatarsal base right foot, sprain/strain right shoulder and wrist." (Tr. 158.) During this examination, Dr. Zaretsky did not have an opportunity to review plaintiff's prior x-rays. (Tr. 157.) Dr. Zaretsky's diagnosis remained the same after an August 18, 2004 examination.

Plaintiff draws the Court's attention to Dr. Zaretsky's April 6, 2005, examination report, arguing that after seeing the MRI, EMG and NCS results, Dr. Zaretsky "reversed himself" and found that plaintiff suffered a "mild partial disability" based on the MRI results concerning the lumbar spine. (See, e.g., Pl.'s Br. 19, 26; Tr. 144.) According to Dr. Zaretsky, plaintiff retained "the capacity for gainful employment exclusive of heavy lifting" and required symptomatic treatment on a 4-6 week basis. (Tr. 144.) Dr. Zaretsky examined plaintiff several more times, on each occasion finding "mild partial disability" with the retained capacity for gainful employment exclusive of heavy lifting. (See Tr. 136 (recommending blood test for gout, though "this would not be on a causally related basis"), 138, 140, 142.)

### D. Dr. Steven Calvino, Consultative Orthopedist

Dr. Calvino examined plaintiff on August 28, 2006. (Tr. 241-44.) He diagnosed plaintiff with chronic low back pain, gouty arthritis, hypertension and urolithiasis. (Tr. 244.) His prognosis was "fair." (Id.) He also found, despite plaintiff's reports of sharp lower back pain, that plaintiff had no restrictions for standing, walking, sitting or fine motor activities. (Id.)

8

### E.     Dr. Marilee Mescon, Consultative Internist

Plaintiff saw Dr. Mescon the same day. (Tr. 247-52.) She diagnosed well-controlled hypertension, prostate problems, history of right elbow and right foot fracture, and traumatic low back pain, history of atypical chest pain, history of kidney stones. (Tr. 251.) She found that "on the basis of the history and physical just performed, there are no objective findings to support the fact that the claimant would be restricted in his ability to sit or stand. His capacity to climb, push, pull, or carry heavy objects may be mildly to moderately restricted by right foot, elbow, and back pain." (Id.)

## III.    The ALJ's Decision

The ALJ held a hearing on January 15, 2008, in Jamaica, New York. Plaintiff was represented by his current counsel. Plaintiff testified in English, although when asked if he spoke English plaintiff responded only "little bit." (Tr. 22.) A Bengali interpreter was present if needed. (Id.) Plaintiff testified that he could not sit for more than one hour at a time without experiencing "severe pain." (Tr. 38.) When asked how much weight he could lift he stated he could lift "maximum two pounds" with his right hand, and perhaps up to 20 pounds with both hands. (Tr. 39 ("Q With both hands can you lift 20 pounds; A Yeah, left hand I can, but it make me problem. If I try, the shoulder become – make problem on the right side – left side").) Plaintiff also testified that he would walk up to 10 blocks before needing to rest and that he usually walks to the mosque (two blocks away) twice per day. (Tr. 41.) He told the ALJ that he takes Flexeril and Norvasc for hypertension and Tylenol for pain. (Tr. 41-42.)

The ALJ issued his decision on May 19, 2008, finding that plaintiff could "sit 6 hours in an 8-hour day with regularly scheduled breaks, stand and/or walk 6 hours in an 8-hour day with

9

regularly scheduled breaks, occasionally lift and/or carry up to twenty pounds and frequently lift and/or carry up to 10 pounds and he could perform a full range of light work." (Tr. 17.) In so finding, the ALJ did not accept Dr. Rahman's assessment that plaintiff could not perform sedentary work, on the ground that Dr. Rahman's opinion "is not supported." (Id.) The ALJ then explained his determination not to give Dr. Rahman's opinion controlling weight, stating that Dr. Rahman's own medical findings, plaintiff's "activities," and the medical findings, assessments and opinions of Dr. Zaretsky, Dr. Mescon and Dr. Calvino "contradicted" Dr. Rahman's opinion. (Id.)

## DISCUSSION

The Court finds a limited remand appropriate in this case for two principal reasons: (1) the ALJ devoted only four lines of his decision to explain why he disregarded Dr. Rahman's opinions, while ignoring the fact that Dr. Zaretsky's assessments may have been limited to "causally related" injuries and Drs. Mescon and Calvino may not have examined plaintiff's clinical test results; and (2) the ALJ's decision inaccurately characterized the record on certain points, notably in finding that plaintiff saw Dr. Rahman "infrequently," when the record shows eleven visits over a four-year period. The Court also registers its concern regarding the ALJ's failure to ask the Bengali interpreter present at the hearing to step in when it became clear that plaintiff could not adequately express himself in English. Plaintiff worked for many years before his 2003 accident, and presents a well-documented history of chronic, severe back pain after the accident. The record also contains ample evidence that long sedentary periods exacerbate his pain.

An applicant is "disabled" if he demonstrates the "inability to engage in any substantial

10

gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). His impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). In evaluating disability claims, the ALJ follows a five-step, sequential analysis:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982)).

Plaintiff bears the burden of proof for the first four steps and therefore must demonstrate an inability to return to past relevant work. See Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1999); Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995). The Commissioner then has a limited burden at step five to show that there is other work in the national economy that the claimant can perform. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

## II. Standard of Review

A court reviewing a decision of the Commissioner must determine whether the Commissioner's conclusions are supported by correct legal standards and are supported by substantial evidence in the record as a whole. See, e.g., Green-Younger v. Barnhart, 335 F.3d 99, 105 (2d Cir. 2003) (quoting Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000)); Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Further, the ALJ has "an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel." Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000).

## III. Application of the Treating Physician Rule

The Commissioner does not dispute that "the ALJ did not give controlling weight to plaintiff's treating physician, Dr. Rahman, who stated that plaintiff could not perform even sedentary work." (Comm'r Br. 21.) The parties do, however, dispute whether or not the weight accorded to Dr. Rahman's opinion reflects a proper application of the treating physician rule.

> Under the "treating physician" rule, "the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); see also 20 C.F.R. § 404.1527(d)(2) ("If we find a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). The deference accorded to a treating physician's opinion may, however, be reduced upon consideration of other factors, including the length and nature of the treating doctor's relationship with the patient, the extent to which the medical evidence supports the doctor's opinion, whether the doctor is a

12

specialist, the consistency of the opinion with the rest of the medical record, and any other factors "which tend to support or contradict the opinion." 20 C.F.R. § 404.1527(d)(2)(i)-(ii) and (d)(3)-(6).

Michels v. Astrue, 297 Fed. Appx. 74, 75 (2d Cir. 2008).

The ALJ concluded that Dr. Rahman's opinion (*i.e.* his assessment that claimant could not perform a full range of sedentary work) "is contradicted by Dr. Rahman's medical findings, and the medical findings of Dr. Zaretsky, Dr. Mescon and Dr. Calvino, the assessments and opinions of Dr. Zaretsky, Dr. Mescon and Dr. Calvino and the claimant's own activities and is not accepted." (Tr. 17.) The ALJ consequently accorded "greater weight" to the opinions of the other examining physicians. (Id.)

Claimant disputes essentially two aspects of the ALJ's brief rationale for dismissing the opinion of Dr. Rahman: (1) the ALJ did not meaningfully consider the relevant factors involved in applying the treating physician rule, and (2) the ALJ incorrectly found the other medical opinions to be contradictory, where, in reality, these opinions only differed from Dr. Rahman's assessments as to the degree of disability claimant experienced, "not whether he had a disability." (Pl.'s Br. 17-18.) Plaintiff also argues that the opinions of examining physicians cannot amount to substantial evidence, particularly because neither physician examined plaintiff's MRI and other objective test results. Moreover, after viewing the MRI results, Dr. Zaretsky altered his opinion as to the severity of plaintiff's lower-back pain, finding him partially disabled.

The Court agrees that the ALJ's rationale for "not accept[ing]" Dr. Rahman's opinion as to the severity of plaintiff's disability fails to account for several key factors typically considered under the treating physician rule. Michels v. Astrue, 297 Fed. Appx. at 75. Dr. Rahman is a

13

specialist in rehabilitation, he saw plaintiff regularly, and his diagnosis remained consistent over the course of his treatment. See id. Moreover, the record does not show that Drs. Mescon and Calvino reviewed critical objective test results. Without viewing such records, these doctors likely could not have opined meaningfully as to the severity of plaintiff's lower-back pain. (See Pl.'s Br. 25.)

Both Dr. Rahman and Dr. Zaretsky examined plaintiff's clinical test results, and each saw plaintiff regularly after his alleged onset date of November 19, 2003. Dr. Zaretsky consistently concluded that plaintiff could perform a full range of sedentary work exclusive of heavy lifting, even after reviewing plaintiff's MRI results. Dr. Rahman, on the other hand, consistently excluded long periods of sitting and found plaintiff's disability much more limiting. The ALJ did not consider whether Dr. Zaretsky's opinion should be given less weight in light of his role as the insurance company's doctor. This fact does not necessarily undermine Dr. Zaretsky's credibility, but it is highly relevant that Dr. Zaretsky's reports typically qualify when certain aspects of plaintiff's condition are not "causally related" to the work-related accident of November 19, 2003. The ALJ did not consider the limited nature of Dr. Zaretsky's examination as a potential indication that he was not concerned with plaintiff's back problems, but merely focused on the injuries plaintiff sustained as a direct result of the accident–to his hand, wrist, elbow and foot. For example, Dr. Zaretsky may have recommended a full range of light work but excluded only heavy lifting because he was focusing on plaintiff's upper-body limitations, and not on plaintiff's back pain, which was not "causally related" to the accident for insurance purposes.

In short, the ALJ's minimal explanation for disregarding Dr. Rahman's medical opinion

does not adequately examine relevant factors typically considered in applying the treating physician rule and rests on the faulty premise that other medical evidence of record is highly reliable and materially inconsistent with Dr. Rahman's findings.

## IV. Mischaracterizations of the Record

The ALJ omitted relevant evidence of record in the form of Dr. Zaretsky's so-called "reversal" after reviewing plaintiff's MRI results; he also affirmatively mischaracterized the record on certain points. (Pl.'s Br. 26.)

In his decision, the ALJ notes that Dr. Zaretsky found plaintiff's injuries had "resolved" as of March 31, 2004, about five months after the accident. However, the ALJ never acknowledged that Dr. Zaretsky altered his diagnosis after reviewing objective medical test results, recommending physical therapy and finding plaintiff partially disabled. (Tr. 135-42.) While plaintiff may overemphasize the gravity of Dr. Zaretsky's "reversal," the fact that it is omitted from the ALJ's decision is problematic, particularly considering the importance of Dr. Zaretsky's opinion to the ALJ's ultimate conclusion.

The ALJ's decision also includes some inaccurate characterizations of the evidence, each of which tend to undermine plaintiff's claim of total disability. First, the ALJ rejected Dr. Rahman's opinion in part because "the medical evidence . . . revealed that claimant had a good range of motion of the spine and was neurovascularly intact." (Tr. 17.) Neither Dr. Rahman nor Dr. Zaretsky characterized plaintiff's lumbar spine flexion and extension as "good." (Pl.'s Br. 23.)

Second, the ALJ states that Dr. Rahman examined plaintiff "infrequently." This is not an accurate characterization considering plaintiff's numerous visits to Dr. Rahman and the doctor's

detailed reports documenting those visits. Specifically, the ALJ found it "noteworthy" that Dr. Rahman "did not state the frequency of visits although asked to do so." (Tr. 14.) However, the ALJ had a duty to develop the record as to this point, particularly if it bore on the decision to discount Dr. Rahman's opinion. (Pl.'s Br. 21.); see also 20 C.F.R. § 404.1593.

Finally, the ALJ stated that the Dr. Rahman's October 16, 2007 report demonstrated that plaintiff's condition "improved." (Tr. 15.) Plaintiff argues, and the Court agrees, that a fair reading of the report (and even a fair reading of Dr. Zaretsky's reports) suggests that plaintiff's condition has remained the same or deteriorated. In his last report of record, Dr. Zaretsky still diagnosed plaintiff as partially disabled, unable to perform work that involved heavy lifting, and recommended testing for gout. (Tr. 136.) This is hardly an improvement.

## V. Failure to Credit Plaintiff's Complaints of Pain

A claimant "with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." Stieberger v. Sullivan, 738 F. Supp. 716, 742 (S.D.N.Y. 1990); see also Singletary v. Secretary of Health, Educ. & Welfare, 623 F.2d 217, 219 (2d Cir. 1980). In this case, it is particularly noteworthy that plaintiff returned to work for several years after a previous accident in 1999. Notwithstanding plaintiff's good work history, the ALJ found plaintiff's subjective complaints of pain not credible. He did so in part based on the allegedly "good" range of motion in plaintiff's spine. Rejecting plaintiff's reports of severe pain after long periods of sitting, the ALJ found plaintiff had the capacity, *inter alia*, "to sit 6 hours in an 8-hour day with regularly scheduled breaks." (Tr. 17.) In so finding the ALJ also rejected as "not supported" Dr. Rahman's assessment that plaintiff could not perform sedentary work.

16

The ALJ should reassess this determination in light of the Court's instructions concerning both the proper application of the treating physician rule and the ALJ's mischaracterizations of the medical evidence.

## CONCLUSION

Upon remand the ALJ should (1) explain why he gave greater weight to the opinion of Dr. Zaretsky despite the fact that Dr. Zaretsky's observations may have been limited to "causally related" injuries; (2) determine if the state medical examiners, Drs. Mescon and Calvino, reviewed objective test results in making their respective diagnoses, and adjust any weight given to their opinions accordingly; (3) explain why controlling weight was not given to plaintiff's treating physician, Dr. Rahman, including an analysis of the all relevant factors bearing on the decision; (4) if necessary, further develop the record with respect to the frequency of plaintiff's visits to Dr. Rahman after his onset date; (5) correct the record evidence discussed herein; and (6) revisit the credibility determination with respect to plaintiff's subjective complaints of severe back pain. The Court respectfully recommends that any further testimony from plaintiff should be heard through an interpreter.

SO ORDERED.

Dated: Brooklyn, New York
October 20, 2009

                                              s/ Judge Raymond J. Dearie
                                      RAYMOND L. DEARIE
                                      United States District Judge